CLEVENGER, Circuit Judge,
concurring.
I agree with Judge Rader’s analysis of the relevant statutory provisions in this case and therefore join the opinion he writes for the court. I am not as certain as Judge Rader that the ongoing Paragraph IV litigation will cleanly resolve the dispute between the parties.
The dissent masks the cause for the dispute between the parties. Novo did nothing that was illegal or forbidden. FDA voluntarily requested a change to the approved indications for PRANDIN® which required Novo to use FDA’s new approved labeling. The change also permitted Novo to revise its use code as the relevant FDA form, “Patent Information Submitted Upon and After Approval of an NDA or Supplement,” expressly instructed Novo to “[sjubmit the description of the approved indication or method of use that *1368 you propose FDA include as the ‘Use Code’ in the Orange Book.” Novo changed its use code to match the new PRANDIN® indication. Nothing in the record suggests that Novo is responsible for the labeling change, which, given the statutory and regulatory framework, happens to benefit Novo at Caraco’s expense.
If not for FDA’s request that Novo change its labeling to the present broad indication, everything would have worked properly under the relevant statutes. As Judge Rader notes, the “efficient dispute resolution mechanism” was in play. Cara-co filed its ANDA for repaglinide, and by making its Paragraph IV certification had committed the statutory act of infringement. Novo followed with its infringement suit. Caraco was prepared to defend on the grounds that its proposed use of repaglinide would not induce infringement of the '358 patent. Caraco also filed a section viii statement in light of the then-approved labeling and use code for PRANDIN®, and proposed carve-out language in its labeling to signify its proposed non-infringing use of repaglinide. Caraco was thus set to get FDA approval to bring its generic drug to market and to defend itself in Novo’s Paragraph IV suit.
But FDA, acting independently, gummed up the works. By requiring a single broad indication for repaglinide as part of the approved labeling, FDA created a situation where Caraco can no longer assert that its proposed labeling does not infringe the '358 patent. It remains to be seen what impact FDA’s action will have on Caraco’s ability to defend itself in the ongoing Paragraph IV litigation, but FDA’s regulatory action threatens to impair Caraco’s ability to disprove infringement. FDA thus may have inadvertently upset the careful balance of interests represented by the efficient dispute resolution mechanism Congress created in the Hatch-Waxman Act.
The dissent’s fix would be to have United States District Courts dictate to FDA what indications should be used on the prescribed labeling for approved drugs, even though there is nothing illegal, or even incorrect, about Novo’s current use code. There is no basis for a counterclaim to correct or delete the patent information submitted by Novo. If a fix is in order under the circumstances of this case, it lies with the FDA and Congress to understand the consequences of changing the approved repaglinide labeling to a single broad indication, and corresponding use code, and to remedy the situation. Laying blame on Novo is wrong.
The counterclaim statute, which the dissent would expand beyond its literal reach, was designed to cure the situation presented in Mylan. Congress has not addressed the fact situation presented in this case. Congress is the appropriate entity to readjust, if necessary, the delicate balance it has struck between original drug manufacturers and their generic counterparts.